UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SARAH E. THORNE                                              CIVIL ACTION

V.                                                           NO. 16-0262

BARD PERIPHERAL VASCULAR, INC.                               SECTION F

ORDER AND REASONS

Before the Court is Bard Peripheral Vascular, Inc.'s motion to dismiss the plaintiff's complaint. For the reasons that follow, the motion is DENIED.

**Background**

This lawsuit arises out of a laid-off employee's efforts to recover unpaid wages including commission payments and bonuses she alleges she earned.

Sarah Thorne was employed as a sales representative (Territory Manager) for Bard Peripheral Vascular (BPV) from 2012 until January 2015, a position for which she was paid a base salary, commissions, and bonuses.[1] In 2014, the 2014 Biopsy TM Compensation and National Sales Contest Plan (the Plan) was circulated to Ms. Thorne. The Plan outlined eligibility for

---

[1] All facts are taken from the plaintiff's first amended complaint, which replaced her original complaint in its entirety.

1

commission payments and bonuses. In particular, the Plan detailed requirements for earning commission payments, quarterly bonuses, the Seniority Enrichment Bonus, and the District of the Year Award. Commission payments were to be awarded on a sliding scale according to a revenue to base[2] percentage. In practice, BPV determined the base by multiplying the number of selling days in the year by each individual sales representative's daily number. To be eligible for quarterly bonuses, the Plan required Territory Managers to achieve their quarterly sales quota, defined as $30,000 over base. The Plan further stipulated that quarterly bonuses may be "made up" as the year goes on, so that Territory Managers who missed a quarterly quota could later earn the bonus for that quarter if they compensated for the deficit in subsequent quarters. To be eligible for the Seniority Enrichment Bonus, the Plan required Territory Managers to achieve their annual sales quota and to have been employees for at least two years. The annual sales quota was described in the Plan as follows: "$120k Quota is based on total territory sales growth over prior year." The District of the Year Award was to be awarded to the district with the largest annual sales increase, with the period of the contest running from January

---

[2] The base is the figure which Territory Managers were expected to grow by $120,000 to meet their annual quota. For quarterly bonuses, Territory Managers were expected to exceed the base by $30,000 per quarter. For commissions, Territory Managers were expected to exceed the base by $10,000 monthly. BPV and Ms. Thorne dispute how the base is determined.

2

2014 to November 2014. The Plan further stipulated that Territory Managers must be employees of BPV at the time the award was given, usually in the second week of the following January.

In December 2014, Ms. Thorne was on track to exceed her annual quota.[3] She had earned and received quarterly bonuses for Q1-Q3 in 2014. However, BPV erroneously entered 22 selling days for December in the formula used to calculate Ms. Thorne's base, rather than the correct number of 21, artificially inflating Ms. Thorne's base.[4] BPV acknowledged that December 2014 had only 21 selling days,[5] but 22 was the number of selling days used to calculate Ms. Thorne's base. With her base now artificially high, Ms. Thorne fell short of the quota, as erroneously calculated. Additionally, BPV reported a number for Ms. Thorne's December 2014 distributor sales that was less than half of her next-lowest selling month of the year.[6]

---

[3] On December 2-3, 2014, a manager informed Ms. Thorne that she would need to exceed her base by "around $17,571" to meet her annual quota; Ms. Thorne exceeded her base by $21,404 in December 2014.

[4] Ms. Thorne alleges that the formula used by BPV was: the individual's (daily number) x (selling days) + $120,000 (for the annual quota) OR $30,000 (for the quarterly quota) OR $10,000 (for the monthly quota).

[5] In a March 2015 email to Ms. Thorne, a BPV representative stated that the number of selling days in December 2014 was intended to be 21.

[6] Her sales in November 2014 (a month with 18 selling days) was $2,265; BPV first reported her December 2014 (a month with 21 selling days) distributor sales as $600 but upgraded the figure to $1,285 with no explanation.

Ms. Thorne was laid off in early January of 2015. Following her termination, BPV refused to pay her three earned bonuses, as well as her base salary for the two days she worked in January 2015 and commission payments for sales made in December 2014 and January 2015. BPV refused to provide Ms. Thorne with any of her sales data from December 2014 when she questioned the accuracy of the distributor sales figure reported by BPV. For the next three months, she attempted to secure payment for the three bonuses she alleges she earned in 2014.[7]

Failing to make any progress, Ms. Thorne sued Bard Peripheral Vascular, Inc., seeking to recover unpaid wages in the form of the bonus payments, unpaid commission payments, and unpaid base salary; as well as statutory damages and attorney's fees. After BPV answered the original complaint, Ms. Thorne filed a first amended complaint which replaced in its entirety her original complaint. First, Ms. Thorne seeks to recover from BPV unpaid wages in the form of commission payments for December 2014 and January 2015 under La.R.S. 23:631, as well as statutory damages on overdue commissions and attorney's fees under La.R.S. 51:444. Second, Ms. Thorne seeks to recover an award of $5,000, the value of the quarterly bonus for the fourth quarter of 2014, as well as a penalty of 90 days wages ($26,785.71) under La.R.S. 23:632 and

---

[7] The Seniority Enrichment Bonus, the District of the Year Award, and the quarterly bonus for the fourth quarter of 2014.

4

attorney's fees under La.R.S. 51:444. Third, Ms. Thorne seeks to recover under La.R.S. 23:631 an as-yet undetermined amount equal to the Seniority Enrichment Bonus,[8] as well as a penalty of 90 days wages ($26,785.71) under La.R.S. 23:632 and attorney's fees under La.R.S. 51:444. Fourth, Ms. Thorne seeks to recover, under La.R.S. 23:631, *et seq.*, the unpaid portion of the District of the Year Award ($2,400), as well as a penalty of 90 days wages ($26,785.71) and attorney's fees under La.R.S. 23:632. Fifth,[9] Ms. Thorne seeks to recover as-yet undetermined unpaid wages in the form of base salary for January 2015, as well as a penalty of 90 days wages ($26,785.71) and attorney's fees under La.R.S. 23:632.

BPV now seeks to dismiss the plaintiff's complaint on the ground that she has failed to allege a claim for unpaid wages earned under the terms and conditions of an employment agreement, as required by La.R.S. 23:631.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A

---

[8] This is an amount equal to 10% of Ms. Thorne's total commissions and quarterly bonuses.
[9] This claim is, apparently in error, labeled "Count Four" in the complaint. Because it is the fifth claim, it will be referred to as "Count V."

5

& M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050.  Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual

6

allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombley, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more

7

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombley, 550 U.S. at 555 (alteration in original)(citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). The parties agree that the Plan, which is attached to the complaint and incorporated into the complaint by reference, may be considered by the Court. A spreadsheet summarizing Ms. Thorne's sales, quotas, and compensation is also attached to the complaint.[10]

---

[10] The plaintiff contends that the spreadsheet should be considered by the Court to define ambiguous terms in the Plan. Although the defendant contends that the spreadsheet should not be considered in order to determine the terms of the Plan, it does not argue that the spreadsheet should not be considered in connection with its motion; indeed, BPV makes use of the spreadsheet itself in support of its contention that Ms. Thorne failed to meet her December 2014 quota.

II.

*A.*

The Louisiana Wage Payment Act creates liability for an employer who fails to timely pay wages owed to an employee after the employee is terminated from employment. La.R.S. 23:631(A)(1)(a)("[u]pon discharge of any . . . employee . . ., it shall be the duty of the [employer] to pay the amount then due under the terms of employment"). Penalty wages and attorney's fees may be assessed against an employer that fails to comply with La.R.S. 23:631. See La.R.S. 23:632.

La.R.S. 23:634 makes it unlawful for an employment contract to require an employee to forfeit wages actually earned if discharged before the employment contract is completed.

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

La.R.S. 23:634.

Ms. Thorne alleges that BPV failed to: pay daily wages she earned, in violation of La.R.S. 23:631-632; pay commissions she earned, in violation of La.R.S. 51:441, *et seq.*; pay a cash award she won, in violation of La.R.S. 23:631-32; and pay two separate

cash bonuses for which she had qualified, in violation of La.R.S. 23:631-632. Incorporated into her complaint is the Plan, Ms. Thorne's written agreement with BPV.

*B.*

It is undisputed that Louisiana law applies to this dispute. The Court's approach to a contract's meaning is driven by simple common sense principles. The Court's role in interpreting contracts is to determine "the common intent of the parties." LA. CIV. CODE art. 2045. In determining common intent, pursuant to LA. CIV. CODE art. 2047, words and phrases are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See Henry v. South Louisiana Sugars Co-op., Inc., 957 So.2d 1275, 1277 (La. 2007). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" (LA. CIV. CODE art. 2046), and the agreement must be enforced as written. Hebert v. Webre, 982 So.2d 770, 773-74 (La. 2008).

A contract provision "susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV. CODE art. 2048. The issue of ambiguity of a contract is a legal question. Doré Energy Corp. v. Prospective Inv. & Trading Co., Ltd., 570 F.3d 219, 225 (5th

10

Cir. 2009). If the contract is not ambiguous, interpreting it is also a legal issue for the Court. Id. The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous. Campbell v. Melton, 817 So.2d 69, 75 (La. 2002). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code art. 2053. Ambiguous terms should be construed against the drafter. La. Civ. Code art. 2056.

*C.*

BPV now seeks to dismiss all five counts of Ms. Thorne's complaint. The common thread underlying its request for dismissal of three of these counts is BPV's argument that the Plan language contradicts Ms. Thorne's allegations. For her part, Ms. Thorne counters that BPV's argument cannot be resolved at the pleading stage where, as here, the Plan language is both ambiguous (thereby necessitating resort to extrinsic evidence to aid in interpretation) or that BPV's conduct modified written Plan provisions regardless of ambiguity. Mindful of this overarching dispute as to the first three counts, the Court considers the facial plausibility of each count in turn.

11

III.

*A.*

Three of the plaintiff's allegations of unpaid wages[11] turn on: (1) whether BPV intentionally or erroneously miscalculated the plaintiff's sales data for December 2014, making her ineligible for the compensation she seeks under either BPV's interpretation of The Plan or the scheme Thorne alleges defines the terms of The Plan and (2) whether The Plan mandates a year over year increase of $120k or merely uses the prior year's sales as one factor in the quota formula. In sum, the plaintiff alleges that both her objective sales performance and the target she was required to meet as prescribed by the Plan have been altered after the fact by BPV.

To determine whether the plaintiff has stated a claim to recover unpaid wages, the Court must consult the terms of the employment agreement. Both the general statute for unpaid wages (La.R.S. 23:631, *et seq.*) and the statute regarding payout of commissions upon termination (La.R.S. 51:443) limit recovery to payments due under the terms of an employment or compensation agreement at the time of discharge. Because the parties dispute the meaning of certain plan terms, the Court must apply principles of contract interpretation.

---

[11] Counts I-III.

If a contract is clear and unambiguous, the Court may not attempt to extract any other meaning from its terms beyond their plain meaning. However, if a term is ambiguous, the Court must look to extrinsic evidence to determine its meaning. The plaintiff contends that the words "based on" in the annual quota provision are ambiguous. Based on a plain reading of the words, they are reasonably susceptible to either the definition proffered by Ms. Thorne[12] or the one proffered by BPV.[13] Despite BPV's assertion that Ms. Thorne failed to explain how "based on" could be interpreted as having any other meaning than "previous year," Ms. Thorne did so in both her complaint and in her opposition papers. BPV insists that it is patently unreasonable to interpret "based on" more than one way. The Court disagrees. Indeed, another Section of this Court has held that the term "based on" in a contract was by its plain language susceptible of at least two reasonable interpretations. See Checkpoint Fluidic Sys. Int'l v. Guccione, No. 10—4505, 2012 WL 3255200 at *11 (E.D. La. Aug. 22, 2012)(Vance, J.)(holding that "based on" was ambiguous where it could either mean "having the same fundamental principle or theory"

---

[12] Ms. Thorne urges the Court to interpret "based on" previous year to mean that the previous year's sales are merely an input into the daily number, which is then used in the quota formula. Under that interpretation, the annual quota formula would be as follows: (daily number x selling days) + $120,000.
[13] BPV urges the Court to interpret "based on" previous year to mean that the annual quota formula is simply as follows: previous year's sales + $120,000.

or "having the same 'base' or 'foundation'"). When faced with ambiguity in a contract, the Court looks to extrinsic evidence to determine what the term means. Louisiana courts have held that a strong indicator of an ambiguous term's meaning is the conduct of the parties in adhering to or executing the term.[14] Ms. Thorne asserts that BPV understood the "base" to be the product of a daily number it generated and the number of selling days. Ms. Thorne further alleges that BPV used this formula for at least the entirety of her employment to pay employees and award bonuses identical to those she now seeks. If these assertions are proved true, Ms. Thorne would be entitled to recover the wages she is due under that formula and, as a result, under La.R.S. 23:631.

Although Ms. Thorne has plausibly alleged that the terms of the employment agreement included her suggested quota formula, to state a claim she must also plausibly allege that BPV has withheld wages due to her under that formula. Ms. Thorne alleges that BPV withheld commissions she was entitled to under the "daily number" formula for December 2014 in two ways: (a) entering the wrong number of "selling days" into the formula, thus artificially inflating her base and (b) reporting her actual distributor sales incorrectly.[15] Ms. Thorne contends that BPV is using her

---

[14] LA CIV. CODE ANN. art. 2053 (2016).
[15] BPV maintains that whether or not they incorrectly recorded Ms. Thorne's sales is irrelevant because the Plan states that BPV will have the final say in awarding credit for commission and bonus

miscalculated December 2014 sales to deny her wages she is due in three forms: commissions for December 2014 and the two days in January 2015 she was employed (Count I); a quarterly bonus for the fourth quarter of 2014 (Count II); and the Seniority Enrichment Bonus (Count III).

*B.*

1.

First, Ms. Thorne alleges in her complaint that BPV acknowledged that December 2014 was supposed to have 21 selling days, yet BPV used 22 selling days to calculate Ms. Thorne's base for December 2014. Exhibit B to the complaint indicates that Ms. Thorne was paid for December 2014 based on 22 selling days. Ms. Thorne asserts that when 21 is plugged into the formula used by BPV, her December 2014 sales exceed her base, making her eligible for the commission payments under the terms of her employment agreement and, as a result, under La.R.S. 51:443. Ms. Thorne has pled facts which would allow the Court to draw the reasonable inference that BPV withheld commissions due under the formula it used to pay its employees.

Second, Ms. Thorne alleges in her complaint that BPV recorded her distributor sales numbers incorrectly. In support of this

---

purposes. However, insofar as such a provision is a suspensive condition based entirely on the whim of the obligor, it is a nullity under Louisiana law. LA CIV. CODE ANN. art. 1770 (2016).

allegation, she again points to Exhibit B, which indicates that her December 2014 distributor sales, as reported by BPV, were less than half of her next-lowest selling month.  Ms. Thorne also alleges that in the time since the initiation of this suit, BPV has, without explanation, adjusted her December 2014 distributor sales from $600 to $1,285.[16]  While BPV rightly notes that Ms. Thorne has not indicated with absolute precision which sales she believes have been omitted, she has identified a sub-category of her sales and a specific time period: December 2014 and the first two days of January 2015.  Further, Ms. Thorne alleges that BPV has repeatedly refused to provide her with any of her sales records.  Ms. Thorne has pled more than a "'the defendant unlawfully harmed me' accusation."[17]  She alleged specific conduct (misreporting sales) by the defendant which has a clear and direct bearing on the alleged harm (the withholding of commissions). Ms. Thorne has sufficiently pled a claim for which relief may be granted in Count I.

---

[16] At the time Ms. Thorne filed her original complaint, BPV reported that her distributor sales were "around $600" for December 2014. By the time her first amended complaint was filed, BPV's spreadsheet, which is attached as Exhibit B to the complaint, stated that Ms. Thorne's distributor sales were $1,285 in December 2014.
[17] Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

2.

Similarly, Ms. Thorne alleges that BPV's miscalculation of her December 2014 sales is also being used to justify denying her a quarterly bonus for the fourth quarter of 2014 (Count II) and the Seniority Enrichment Bonus (Count III). Like the commission payments in Count I, both bonuses are based on quota achievement. As described above, Ms. Thorne alleges that she met her quota as determined by her employment agreement, but that BPV denied her the bonuses to which she is entitled when it altered the quota formula and her December 2014 sales numbers. Because Claims II and III involve the same well-pleaded facts as Count I, the Court finds that Ms. Thorne has sufficiently pled claims for which relief may be granted in Counts II and III.

C.

Count IV turns on when bonuses are wages "actually earned" under La.R.S. 23:634. La.R.S. 23:634 provides:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

La.R.S. 23:624. "Incentive-based bonuses are considered wages under La.R.S. 23:634. See Pender v. Power Structures, Inc., 359

17

So.2d 1321, 1323 (La. Ct. App. 4 Cir. 1978)(holding that "[t]he compensation that the employee is promised in bonuses forms part of the compensation for the employee's labor during the bonus period."). Whether a bonus constitutes an "amount then due" is a mixed question of law and fact.[18] If a bonus has been actually earned, employers cannot require employees to forfeit the bonus upon discharge.[19] Such forfeiture clauses violate Louisiana public policy.[20] In the seminal forfeiture clause case, Morse v. J. Ray McDermott & Co., the state high court held that forfeiture clauses are "manifestly unjust" where the employer unilaterally prevents the employee from continuing employment and collecting deferred compensation.[21] However, Louisiana courts have upheld provisions conditioning bonuses on continued employment where the compensation agreement specified that the bonus *was not earned* until payout,[22] as well as where continued adequate performance was a condition of receiving a bonus in installments.[23] Notably, when Louisiana courts uphold continued employment conditions, it is

---

[18] See Wiggins v. Coast Professional, Inc., No. 14-002, 2015 WL 692921 at *8 (W.D. La. Feb. 18, 2015)(quoting Batiansila v. Cardiovascular Sys., 952 F.2d 893, 896 (5th Cir. 1992)).
[19] La.R.S. 23:634.
[20] See, e.g., Morse v. J. Ray McDermott & Co., 344 So.2d 1353, 1358 (La. 1976).
[21] Id.
[22] See Wiggins, No. 14-002, 2015 WL 692921 at *9.
[23] See, e.g., Avila v. Sanofi-Aventis, 90 So.3d 1132, 1135 (La.App.5 Cir. 2012)(upholding a provision which required employees, in addition to being employed when bonus installments were paid out, to be in 'good standing' at the time of payout).

18

generally because some part of performance on the part of the employee, in addition to mere continued employment, is still due.

Here, the Plan states that continued employment is a condition of receiving the bonus. However, unlike Wiggins, the Plan does not specify that the bonus is not *earned* until payout. To the contrary, the Plan specifies that the contest for the bonus was to run from January 2014 until November 2014. Ms. Thorne alleges that BPV included her on a list of individuals, dated January 30, 2015, who would be paid the District of the Year Award. And, she further alleges that BPV awarded the bonus to other members of her team, including those who were not employees at the time of payout or who did not meet their sales quotas. Ms. Thorne has pled facts sufficient to allow the Court to reasonably infer that the District of the Year Award was actually earned in November 2014, rather than at the time of payout. As a result, it is plausible that the condition requiring recipients to be employed by BPV at the time of payout amounts to an impermissible forfeiture clause. Therefore, Ms. Thorne has sufficiently stated a claim upon which relief may be granted in Count IV.

*D.*

In Count V of her complaint, Ms. Thorne alleges that she was never paid her base salary for January 2015. Puzzlingly, BPV asserts in both its motion to dismiss and reply that Ms. Thorne has failed to state a claim for unpaid wages which satisfies Rule

19

8. In the face of Ms. Thorne's explicit allegation that "Ms. Thorne was never paid her non-commission base [p]ay/wages for January 2015," BPV nevertheless contends that she did not explicitly make a claim for unpaid base salary. The Court disagrees. Ms. Thorne has sufficiently stated a claim upon which relief may be granted in Count V.

Accordingly, the defendant's motion to dismiss is DENIED.

New Orleans, Louisiana, July 13, 2016

*[signature]*

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE